## Spencer *against* Curtiss:

### IN ERROR.

In *assumpsit* by *A* against *B*, the declaration alleged, that in consideration that the plaintiff would sell and deliver to *S* a certain quantity of cheese, the defendant promised, if *S* should fail to pay for it within a specified time, he, the defendant, would pay for it; that the plaintiff delivered the cheese; that *S* did not pay for it within the time; that due notice thereof was given to the defendant; that the defendant thereupon became liable, and promised to pay, and failed to perform that promise. The declaration also alleged, that, at the time of such agreement and undertaking of the defendant, he, the defendant, agreed with and purchased of *C* a separate quantity of cheese, made in the dairy of *C*, on the same terms; and that he then and there made and delivered to the plaintiff and *C*, the following writing: "This certifies, that I have purchased of *A* and *C* all of their cheese that will do to carry off the 20th of *November* next, to be delivered at the store of *D* in *H*., at 10 cents *per* pound, to be paid on the 1st of *April*, 1840. Said dairies I purchase for *S*; and should *S* fail of paying for the same, by the 1st of

*April*, 1840, I hereby become responsible for the payment of said dairies. *September*, 27th, 1839. [Signed.] *B.*"  Held, 1. that the allegations respecting the contract of the defendant with *C*, were immaterial; 2. that the recital of the writing was only a statement of evidence, and was not equivalent to an averment of a contract; 3. that these might be rejected as surplusage; 4. that this being done, the declaration shewed no *joint* undertaking with the plaintiff and *C*, and the action brought by *A* alone, was sustainable. [Two judges dissenting.]

THIS was an action of *assumpsit,* brought originally by *Truman Curtiss* against *Grinnell Spencer.* The declaration contained three counts; one of which only it is necessary to notice here.

The third count alleged, that the defendant is indebted to the plaintiff in the sum of 241 dollars, 90 cents, for that on the 27th of *September*, 1839, in consideration that the plaintiff, at the special instance and request of the defendant, would sell to *Alpha Sage,* then of *Colebrook,* a certain quantity of cheese, *viz.* all the cheese made in the plaintiff's dairy, that will do to carry off the 20th of *November* then next, and to deliver the same at the store of *Jason Sage,* in the city of *Hartford,* he, the defendant, undertook and faithfully promised him, the plaintiff, that should the said *Alpha* fail of paying the plaintiff the sum of 10 cents *per* pound therefor, by the 1st of *April*, 1840, he, the defendant, would become responsible to the plaintiff for the payment of said sum, and would pay the same to the plaintiff: that at the time of the agreement and undertaking of the defendant as aforesaid, *viz.* on the 27th of *November*, 1839, he, the defendant, agreed with and purchased of *Jabez G. Curtiss,* a separate quantity of cheese, made in the dairy of said *Jabez,* on terms and conditions in all respects the same with those contained in the aforesaid agreement of the defendant with the plaintiff: and the defendant then and there, made, executed and delivered to the plaintiff, and said *Jabez,* a certain writing, in substance as follows, *viz.* "This certifies, that I, *Grinnell Spencer,* of *Winchester,* have purchased of *Jabez G. Curtiss,* and *Truman Curtiss,* all of their cheese that will do to carry off the 20th of *November* next, to be delivered at the store of *Jason Sage* in *Hartford,* at 10 cents *per* pound, to be paid on the 1st of *April,* 1840. Said dairies I purchase for *Alpha Sage* of *Colebrook,* and should said

*Litchfield*,
June, 1842.

Spencer
*v.*
Curtiss.

*Alpha Sage* fail of paying for the same, by the 1st of *April*, 1840, I hereby become responsible for the payment of said dairies. *Winchester, September* 27th, 1839. *Grinnell Spencer.*" That in pursuance and consideration of such agreement and undertaking, and confiding in the same, the plaintiff afterwards, *viz.* on the 8th, and then again on the 24th, of *October*, 1839, delivered, at the store of said *Jason Sage*, the quantity of 24019 pounds of cheese, it being the quantity of cheese made in the plaintiff's dairy, and fit to be carried off by said 20th of *November*, 1839, and all in manner as, in said agreement of the defendant with the plaintiff, contemplated: that said *Alpha Sage* did not, on said 1st day of *April*, 1840, nor at any other time, pay, or cause to be paid, said sum, or any part thereof, stipulated, as aforesaid, to be paid for said cheese, though often requested and demanded, and particularly, on said 1st of *April*, 1840, but at all times has wholly neglected and refused so to do; of all which, the defendant afterwards, on the day and year last aforesaid, had notice: that the defendant, by reason of the premises, has become liable to pay said sum of money, and being so liable, he, the defendant, on the day and year last aforesaid, undertook and faithfully promised, &c.

To this count the defendant demurred specially, assigning, as cause of demurrer, that said count is repugnant and inconsistent, and incapable of being understood, in this, that in one part of said count it is averred, that the consideration of the defendant's promise was an undertaking, on the part of the plaintiff, that he would sell to *Alpha Sage* a certain quantity of cheese, whilst in a subsequent part of that count, it is averred, and distinctly appears, that the consideration of the defendant's promise was, that said *Alpha Sage* had purchased, or that the plaintiff and *Jabez G. Curtiss* had sold their cheese to said *Alpha;* and that said count is, in other respects, informal and insufficient in the law.

The case was argued, on this demurrer, before the superior court, held at *Litchfield, August* term, 1841, by *Sherman*, J. After mature deliberation, he delivered the following opinion.

"1. The exception specified in the demurrer, is, in substance, that two distinct considerations for the promise are alleged; first, a contract *executory, to sell* the cheese to *Alpha Sage;* and secondly, a contract *executed, viz.* that the

*Litchfield,*
June, 1842.
———
Spencer
*v.*
Curtiss.

plaintiff *had sold* the cheese to said *Alpha*, or that the plaintiff and *Jabez G. Curtiss* had so sold to said *Alpha* ; but the contract, as stated in the declaration, and in the written agreement recited, is *executory only.*

" The first allegation is, that the agreement was in consideration that the plaintiff *would sell.* This is clearly executory. The second is, that the defendant agreed with and purchased of *Jabez G. Curtiss*, a *separate* quantity, made in the dairy of said *Jabez*, on the same terms as the aforesaid agreement made with the plaintiff. As to this, it may be observed, first, that it is *another* contract, made with *another* man, for *another* article : and whether the terms of it were the same, [as is averred,] or differed in regard to the consideration executed, is immaterial, as it is not the contract on which this count is grounded : no damages are claimed for the breach of it. It is mere *surplusage*, and may be rejected. Secondly, the agreement, as stated in the writing recited, *is* executory. It says, indeed, that " I, *Grinnell Spencer*, have purchased ;" which would seem to refer to a past sale ; but it certainly includes cheese *to be afterwards made*, as well as that on hand ; and is, therefore, necessarily executory ; for there cannot be a sale *in presenti*, of that which does not exist. If cheese was made after the date of the agreement, which would " do to carry off the 20th of *November*" following, that would be clearly embraced in the contract ; and the plaintiff would have been liable to damages, if he had refused to deliver it at *Hartford.* For these reasons, the contract alleged in this count, on which the suit is brought, and for the breach of which damages are demanded, is wholly executory, and not executed, by every averment, and in the writing which is recited.

" 2. It was insisted, by the defendant's counsel, that there was a fatal variance between the contract averred, and that recited. The declaration is upon a contract to deliver cheese, which was the several property of the plaintiff ; but it was insisted, that the written contract is to deliver cheese which was the *joint* property of the plaintiff and *Jabez G. Curtiss.* It was further contended, that the contract in this count was made with the plaintiff severally ; but that stated in the written agreement was made with the *plaintiff and said Jabez*, jointly. The language of a contract is to be con-

strued according to the sense in which it is used and under-
stood, in the common intercourse of men, and not by the
strict and technical rules of philology or law. The inquiry is,
what did the parties mean by it ? Testing it by this rule, we
shall find, that when we speak of property, which belongs
to a number of persons *severally*, we generally call it *theirs*.
If the stock of a bank in *Connecticut* were owned by a num-
ber of stockholders in the city of *New-York*, severally, it
would be proper to say, that it belonged to twenty men in
*New-York*, although they had no joint interest. If several
horse-dealers should bring their respective droves of horses
to sell in the public market, and a shipper should buy the
whole, he might properly say, he bought *their* horses, although
they had not a joint interest. If they should jointly sign an
agreement to deliver them all their droves, on payment of
a given sum, each would be liable *severally*, upon his failure
to execute the agreement. That this writing contemplated
the cheese to be delivered as the several property of the
vendors, is probable, from their using the descriptive word in
the plural number—" all their *dairies*, I purchase," &c.

" As to the contract being made with the plaintiff and
*Jabez* jointly, and not with the plaintiff alone, the same rea-
sons apply. If the cheese was the joint property of both, the
stipulation would be construed as jointly made by both ; but
if they had different dairies, and no concern with each other,
each would be stipulating for himself only. Upon the face
of the writing, it cannot be decided, whether the contract, or
the property embraced in it, was joint or several. The lan-
guage is appropriate to each. It is a *latent ambiguity*, which
may be obviated and made certain, by parol testimony.
They might, if they pleased, have bound themselves jointly,
by proper stipulations, in clear and explicit language ; but
where the language comports as well, according to common
understanding, with their several liabilities, it would be gross
injustice to subject each for the defaults of the other. The
agreement to sell and deliver their dairies, must mean their
*respective* dairies, if their dairies were owned severally.
Neither *could* convey the other's title ; and a promise to do
such an impossibility, would be void, on the face of it, unless
guarded by the solemnities of an estoppel. *A* may agree to
*procure* the horse of *B*, and sell it to *C ;* but if, with the full

knowledge of both parties, he agrees to sell and deliver the horse of *B* to *C*, *while it is B's horse*, the act, if done, would be inoperative, and consequently, the promise void. In such a case, the averment might be made, and the fact proved, if not apparent on the face of the writing. If these dairies were in fact separate, and that known to the parties, when the contract was made, this contract would not impose a joint liability. *Truman could not* sell and deliver the dairy of *Jabez*. But taking the language according to common acceptation, and as it was unquestionably intended by the parties, the defendant is bound to pay each for the quantity of the article which they have respectively delivered in pursuance of the contract. In the allegation "that the defendant agreed with and purchased a separate quantity of cheese, of *Jabez G. Curtiss*," as well as by the other averments in this count, the contracts, and also the dairies which were their subject matter, are clearly stated to be several.

" On these grounds, the demurrer must be over-ruled."

Judgment was accordingly rendered for the plaintiff ; and thereupon the defendant, by motion in error, brought the record before this court for revision.

*L. Church*, for the plaintiff in error, contended, 1. That the allegations of this count in the declaration are *repugnant* and *contradictory*. The consideration of the defendant's undertaking is first alleged to be—that the plaintiff *would sell* to *Alpha Sage* a certain quantity of cheese. It is afterwards alleged to be—that the defendant *purchased* of *Jabez G. Curtiss*—in other words, that *J. G. Curtiss had sold* to the defendant—a separate quantity of cheese.

2. That no consideration is shewn *between these parties*. *Alpha Sage* bought the cheese ; and it was to be delivered to *him*, at his brother's store in *Hartford*. What was this to *Grinnell Spencer* ?

3. That the written contract stated in this count, which is a contract with the plaintiff and *Jabez G. Curtiss jointly*, contemplating a delivery of cheese owned by them jointly, will not support this action, which is brought by *Truman Curtiss* alone, alleging the contract to have been made with him severally.

*Hall,* for the defendant in error, contended, 1. That the declaration was not ill for repugnancy or contradiction.

In the first place, laying the recited writing out of view, (the propriety of which will be considered under another head) the declaration alleges, as a consideration for the defendant's promise, an *executory* undertaking, and its performance by the plaintiff.

But secondly, if the declaration allege an *executory* undertaking, as the consideration of the defendant's promise, and the proof is of an *executed* undertaking, the variance is not material. *Payne* v. *Wilson,* 7 *Barn. & Cres.* 423.

Thirdly, the promise is *entire;* and an entire promise, founded partly on an executed, and partly on an executory, consideration, is supported by proof of an executory consideration. *Andrews* v. *Ives,* 3 *Conn. Rep.* 368. *Bosden* v. *Thinne, Yelv.* 40.

2. That though the words of an agreement import, in respect to promisees, a joint promise, yet, if the interests were in fact *separate* or *several*, each promisee must bring a separate action for his particular damage. The writing will be taken to be several; and this severalty of interest can be shewn, by parol proof. 1 *Chitt. Plead.* 6. *Dunham* v. *Gillis,* 8 *Mass. Rep.* 462. *Tippet* v. *Hawkey,* 3 *Mod.* 263. *Ehle* v. *Purdy,* 6 *Wend.* 629. *Brand* & al. v. *Boulcott,* 3 *Bos. & Pul.* 235. *Osborne* & al. v. *Harper,* 5 *East,* 225. *Graham* & al. v. *Robertson,* 2 *Term Rep.* 282. *James* v. *Emery* & al. 5 *Price,* 527.

3. That the writing in question is a mere *memorandum* of an agreement.

In the first place, this appears on the face of the writing itself.

But secondly, if otherwise, parol proof is admissible to shew that it was in fact a mere *memorandum*, even though it might *prima facie* import on its face an expression of the whole intention of the parties. 3 *Stark. Ev.* 1049. *Jeffery* v. *Walton,* 1 *Stark. Ca.* 267. *Wait* v. *Gibbs* & al. 4 *Pick.* 298.

Thirdly, a certificate or *memorandum* cannot possess the conclusive and exclusive nature and effect of a written contract designed to be the sole depository of the intention of the parties; and while it may be regarded, for certain purposes, it is always liable to be controverted, in a variety of ways, by parol proof. *Harris* v. *Johnston,* 3 *Cranch,* 311.

4. That whether it is a *memorandum* or not, its averment
is *needless* and impertinent : it can be rejected as surplusage, and the count would still remain perfect. 2 *Conn. Rep.* 413. per *Gould*, J.

5. That the writing in question possesses an *ambiguity* of a *latent* nature, which may be raised and explained by parol proof. 3 *Stark. Ev.* 1021. 1028. n. 1. *Chitt. Cont.* 105. *Wilson* & al. v. *Hart*, 7 *Taun.* 295. *Bateman* v. *Phillips*, 15 *East*, 272. *Garrett* & al. v. *Handley*, 4 *Barn. & Cres.* 664. *Doe* d. *Bainbridge* v. *Statham* & al. 7 *Dowl. & Ryl.* 141.

WAITE, J. The only question submitted to our consideration in this case, is, whether the third count in the declaration is sufficient to entitle the plaintiff to judgment upon it in his favour. And that depends upon the question whether the allegations respecting the contract with *Jabez G. Curtiss*, and the making and delivery of the writing set out, so vitiate the count as to preclude a recovery ; or, whether those allegations may be rejected as surplusage.

It is averred, that in consideration that the plaintiff would sell and deliver to one *Sage* a certain quantity of cheese, the defendant promised, if *Sage* failed to pay for the same within a specified time, he would become responsible, and would pay for the same. The plaintiff then avers a delivery of the cheese, the non-payment by *Sage* within the time, notice to the defendant, his consequent liability and promise to pay, and the non-fulfilment of that promise.

Thus far, there is no objection to the count. Indeed, it is not denied, but that, aside from the allegations respecting the contract with *Jabez G. Curtiss* and the writing, the count is well drawn, and the averments made in apt and appropriate words.

But it is insisted, on the part of the defendant, that those allegations shew, that the contract was made jointly with the plaintiff and *Jabez G. Curtiss ;* and if so, a suit cannot be maintained upon it, in the name of one of the joint promisees alone.

But do these allegations amount to an averment that the contract was joint ? It is expressly stated, that the defendant made one contract with the plaintiff, and a similar one

*Litchfield,*
June, 1842.

Spencer
*v.*
Curtiss.

with *Curtiss.* Thus far there is nothing indicating a joint contract. It is then alleged, that the defendant made and delivered to the plaintiff and *Curtiss* a certain writing, which is recited in the count. But it is not averred, that the defendant made any such contract as therein stated ; or that the two contracts were merged in one, by the written instrument. The writing, on trial to the jury, might be *evidence* of the merger ; but the mere allegation that such a writing was *made and delivered,* does not amount to an averment that the defendant made such a contract as might be proved by the writing.

No rule is better established than that facts must be averred, and not the mere evidence of them. Thus, where the plaintiff stated in his declaration, that the defendant, in and by a certain writing or receipt, *acknowledged* that he had borrowed of the plaintiff certain notes, this was holden to be no averment that *he did borrow* them, only that there was evidence of his having borrowed them. And the declaration, upon demurrer, was holden insufficient. *Brunson* v. *Brunson,* 2 *Root,* 73.

So in an action on a promissory note, where no time of payment was specified in the note or declaration, the court held, that although the legal effect of such note was, that it was payable on demand, and on trial would have furnished such evidence ; yet, as the plaintiff had declared, not according to the legal effect of his contract, but on the evidence only, they adjudged the declaration insufficient. *Bacon* v. *Page,* 1 *Conn. Rep.* 404.

And in a more recent case, the plaintiff in a bill in chancery to redeem mortgaged premises, claimed title to the equity of redemption, by virtue of the levy of an execution, and omitted to state that the execution had been recorded upon the town records; the return of the officer upon the execution was set out in the pleadings ; and from that it appeared, that the execution and endorsement had been recorded. But the court held the bill insufficient, for the want of an averment that such record had been made. The judge, in giving the opinion of the court, said, " It is an established rule in pleading, that the plaintiff should declare upon the facts constituting the gist of his action, according to their legal operation, and not

on the evidence of those facts." *Hobart* v. *Frisbie,* 5 *Conn. Rep.* 592.

The fact that the defendant made a contract with *Jabez G. Curtiss* similar to the one made with the plaintiff, is perfectly immaterial, and can have no effect in impairing the plaintiff's right to recover upon his contract. As little effect can be produced by the mere fact that the defendant made and delivered to the plaintiff and *Curtiss* a certain writing, whatever may have been the contents of that writing. All the allegations, therefore, respecting the contract with *Curtiss,* and the writing specified, are perfectly immaterial, and may be rejected as surplusage.

The opinion of a majority of the court, therefore, is, that the count is sufficient, and that judgment must be entered accordingly.

WILLIAMS, Ch. J., and STORRS, J., were of this opinion.

CHURCH, J. I am ever unwilling to yield to objections merely technical. But it sometimes happens, that such objections are the result of principles so fundamental and long established, that to disregard them, would seem to manifest an opposition to the authority of precedent.

I understand the court to concede, and very properly, I think, that the written contract set out in the third count in this declaration, is a promise by *Spencer,* the defendant, to pay *Jabez* and *Truman Curtiss jointly,* for cheese bought of them. It was contended, in argument, that this contract was evidence of a several promise made to each, and of a separate and distinct interest in *Jabez* and *Truman Curtiss* to the property sold. And I understand this was the opinion of the learned judge, by whom this case was decided in the superior court. I cannot construe it thus. The defendant certifies, that he has purchased of *Jabez G. Curtiss* and *Truman Curtiss,* " *all of their cheese.*" The obvious meaning of this language, is, that the cheese was purchased of them jointly, and belonged to them jointly. And though he afterwards speaks of "said dairies," it is in reference to the beforementioned joint purchase, without any intimation that the dairies were the separate property of each.

This being so, a material question raised by the demurrer,

is, whether in the third count in the declaration, the plaintiff does not show that he alone cannot sustain the action, because he sues alone upon a joint contract made with himself and another, without showing that the joint promisee, not joined as plaintiff, is dead.   This depends upon the question, whether the recital of the contract in this count, can be rejected as surplusage.   I differ from a majority of my brethren, in believing that it cannot be thus rejected.

I agree to the general legal positions, which, I understand, controul the opinion of the court,—that matter of surplusage will not vitiate a plea; and that when an averment in pleading may be wholly rejected, without prejudice to the sufficiency of the plea in other respects, such averment is surplusage.   And I agree further, that the pleader need not have set forth this recited contract; and that the count would have been legally sufficient, without such recital.

But there are other principles of equal authority, restraining the general application of the doctrines above conceded, which, in my judgment, are of exact application to the present case, and decisive of the question here raised.

No allegation which is *descriptive* of the identity of the cause of action, or of any thing which is essential to the claim or defence, can be rejected as surplusage.   3 *Stark. Ev.* 1539. So where a party pleads unnecessary matter, which shows that he has no cause of action, or no legal defence, the matter thus pleaded will be fatal to that which would otherwise have been good.   For in this case, the superfluous matter cannot be rejected as immaterial, since it shows, that the pleader has, according to his own statement, no cause of action or defence. *Gould's Pl.* 154.   In the present case, the plaintiff has said, notwithstanding his form and manner of declaring, that his real and sole cause of action, is the recited agreement; and he is to be taken at his word; otherwise, the defendant is misled.

The pleader declares upon a contract or promise made to himself alone; and with this exception, it appears to be *literatim* the identical promise contained in the recited contract; and then he continues to say, that at the same time, the defendant made a separate agreement with *Jabez G. Curtiss,* on the same terms and conditions, in all respects, with the one made with the plaintiff; and still continuing his

averments in regard to these *two promises*, he says, that the defendant, then and there, that is, at the precise time and place when and where these promises were made, delivered to the plaintiff *and* the said *Jabez*, the recited agreement ; not that he delivered an agreement to each one separately ; and immediately, he avers, that in pursuance and consideration of *such agreement* and understanding of the defendant, *viz.* the agreement delivered to the plaintiff and the said *Jabez G. Curtiss* jointly, next before alleged and recited, he, the plaintiff, delivered his cheese to the said *Alpha Sage,* &c.

*Litchfield,*
June, 1842.

Spencer
*v.*
Curtiss.

Now, it seems to me, whether this count in the declaration be read unsophistically, or whether it be read in reference to grammatical proprieties, or under the influence of technical rules, the reader will arrive at the conclusion, that the recited agreement is the sole and very agreement upon which the action is founded, and is descriptive of it ; and also, that the pleader, in his peculiarities of averment, was struggling hard in attempting to declare upon a promise made by the defendant to two, as if it had been made to one person only.   If this be so, and I think it is, then this is a case falling within the rules before alluded to, and shows, that the contract set forth at large, is the one upon which the plaintiff relies for a recovery ; and, of course, according to his own statement, he has no several and separate cause of action against this defendant.

HINMAN, J., was of the same opinion.

Judgment affirmed.